```
             IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF TEXAS
                      HOUSTON DIVISION
```

RAMON GARCIA, §
TDCJ-CID NO. 1200692, §
　　　　　　　　　　　　　　　§
　　　　　　Plaintiff, §
　　　　　　　　　　　　　　　§
v. § CIVIL ACTION NO. H-09-0436
　　　　　　　　　　　　　　　§
TDCJ-CID DIRECTOR, et al., §
　　　　　　　　　　　　　　　§
　　　　　　Defendants. §

### MEMORANDUM OPINION AND ORDER

Ramon Garcia, an inmate confined at the TDCJ-CID Ellis Unit, has filed pleadings in a separate habeas action that have been liberally construed to be a civil rights complaint. See Haines v. Kerner, 92 S.Ct. 594, 596 (1972); Johnson v. Quarterman, 479 F.3d 358, 359 (5th Cir. 2007). After ordering Garcia to answer questions concerning the factual basis for his allegations, the court has determined that this action should be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e).

### I. Procedural History

Garcia originally filed a petition for a writ of habeas corpus in the Eastern District of Texas, which was subsequently transferred to the Corpus Christi Division of the Southern District of Texas because the petition challenged the validity of a state court judgment from Kleberg County, Texas. Garcia v. Director,

C-08-349 (S.D. Tex.). Garcia filed subsequent pleadings in that action accusing officials of failing to protect him and subjecting him to retaliation for filing grievances concerning his treatment. No. C-08-49, Docket Entry Nos. 11, 12, 13, and 14. The Corpus Christi court determined that the allegations were unrelated to his habeas challenge and were complaints against TDCJ-CID officials at the Ellis Unit, which is located in the Houston Division. Id., Docket Entry No. 16, Order to Sever and Transfer. Consequently, the pleadings were transferred to this court for consideration. Id.; see also No. H-09-436, Docket Entry No. 5.

This court found that the factual allegations in Garcia's pleadings from Corpus Christi failed to support an actionable claim under 42 U.S.C. § 1983 because they were vague and conclusory. Docket Entry No. 9. Moreover, Garcia's statements indicated that he may suffer a persecution complex as well as fears of being sexually abused by inmates and guards. See No. C-08-349, Docket Entry No. 11, at 1 and 3; Docket Entry No. 12, at 2. Garcia was given an opportunity to provide additional facts by answering the court's Order for More Definite Statement. No. H-09-436, Docket Entry No. 9. The court has reviewed the More Definite Statement (Docket Entry No. 11) and the prior pleadings and will summarize Garcia's allegations.

## II. Claims and Allegations

Garcia claims that he had been subjected to dangerous conditions in retaliation for filing grievances concerning his

exposure to those conditions. The focus of the complaint that Garcia filed in Corpus Christi stems from a purported sexual assault by another inmate at the Ellis Unit Trustee Camp, which is alleged to have occurred on November 3, 2008. Garcia alleges that inmate Lance Williams, who lived in the cubicle next to Garcia, reached over the cubicle wall and rubbed or (according to Garcia) fondled his thighs while he was asleep. See No. C-08-349, Docket Entry No. 11, at 1. Garcia awoke and asked Williams what he was doing. Williams answered that he was waking him up to go to chow; however, Garcia did not believe him because it was 1:30 a.m. when Williams woke him. Id.

Garcia wanted to report the problem, but he was afraid to contact Lieutenant Kramer (apparently the Trustee camp supervisor) because he had previously submitted an I-60 (TDCJ-CID written communication) reporting that Kramer had allowed inmates to use towels to mop up a floor. Garcia believes that such practices increase the risk of disease and infections. Id. Without citing any facts to support his belief, Garcia claims that Kramer knew that he had filed a complaint against him and told other officers about Garcia's activities. Id. Because there were no other officers available, Garcia sent a letter to the warden complaining about Williams' behavior. Docket Entry No. 12, at 2.

TDCJ-CID Sergeant Crippin conducted an investigation in response to Garcia's letter and called Garcia from the Trustee camp for an interview on November 5, 2008. No. C-08-349, Docket Entry

No. 12, at 2. During the interview Garcia reported that Williams had sexually assaulted him. Crippin saw Garcia again on November 12 and remarked during the second meeting that something did not "look right," implying that he harbored doubts concerning Garcia's story. Id. Garcia believes that Crippin's skepticism stems from a prior report he filed at the TDCJ-CID Garza East Unit in which he accused a female guard of sexual harassment after she ordered him to submit to a strip search. Id. Garcia believes that members of the Unit Classification Committee, including a Major Johnson, were aware of the Garza Unit incident and intended to retaliate against him for filing the report. Id. Consequently, Garcia was removed from the Trustee camp and returned to the Ellis Unit's main building where he was placed in custody with the general prison population. Id.

Garcia complains that he has difficulty coping with the general population. He alleges that he has been subject to threats and extortion. Id. Garcia claims that the defendants deliberately placed him back in general population to place him in harm's way in order to retaliate against him for filing grievances. Id. He further claims that he was assigned to work in the hog barn and disciplined for refusing to work in retaliation for his grievances. Docket Entry No. 13, at 1. He further believes that he has been assigned to work in the hog barn because of his grievances. No. C-08-349, Docket Entry No. 13, at 1.

Garcia's More Definite Statement (Docket Entry Nos. 11, 11-2, 11-3, 11-4, and 11-5) is replete with numerous grievances and I-60 communications. However, much of its content is superfluous and non-responsive to the court's Order for More Definite Statement seeking information regarding his allegations of retaliation. See Docket Entry No. 9. When asked for specific facts regarding retaliatory acts, he complains of numerous cell searches. Docket Entry No. 11-2, at 23. He also complains about being observed in the shower. Id. He complains other inmates have intimidated him to purchase commissary items for them and that the guards have been apathetic to his plight. Id. at 24. However, there are no substantial facts to indicate that there was a retaliatory purpose behind the action; nor are there any facts indicating that his life was threatened or that he was in danger of serious physical harm.

In response to the court's inquiry regarding specific facts that led Garcia to believe that the defendants' acts were done in order to retaliate against him and not for some other reason (see Docket Entry No. 9, at 2, question 9), Garcia responds that the defendants discounted his reports of extortion and failed to take any action. Docket Entry No. 11-2, at 24. He complains that he is still pressured by other inmates because of the defendants' lack of response to his report. Garcia does not provide any direct response to the court's inquiry as to whether any of the defendants made any statement indicating that he would suffer any consequences

-5-

due to his actions. Docket Entry No. 11-2, at 24, response 10; Docket Entry No. 9, at 2, question 10. He reiterates his belief that his removal from the Trustee camp was retaliatory and his statement that Sargent Crippin gave little credence to his charge that inmate Williams made sexual advances against him. Docket Entry No. 11-2, at 25. Garcia makes no other coherent statements other than vague accusations that he was being harassed for pursuing legal activities. Id.

### III. Analysis

As noted in the first section of this Memorandum Opinion and Order, Garcia originally filed a habeas petition challenging the validity of his confinement. However, his additional claims were severed and transferred because they concerned the conditions of his confinement and were claims that should be considered under 42 U.S.C. § 1983. See Cook v. Texas Department of Criminal Justice Transitional Planning Department, 37 F.3d 166, 168 (5th Cir. 1994). To state a claim under section 1983 "a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." James v. Texas Collin County, 535 F.3d 365, 373 (5th Cir. 2008), quoting Moore v. Willis Independent School Dist., 233 F.3d 871, 874 (5th Cir. 2000). When asserting a prisoner civil rights violation the plaintiff cannot rely on vague or conclusory statements to support

a cause of action; he must present facts that, if proven, would entitle him to relief.  See Jones v. Greninger, 188 F.3d 322, 325 (5th Cir. 1999); Hale v. Harney, 786 F.2d 688, 690 (5th Cir. 1986). If the plaintiff does not identify a violation of a specific constitutional right, his claim fails.  Jones, citing Tighe v. Wall, 100 F.3d 41, 43 (5th Cir. 1996).

Garcia attempts to assert that prison officials have placed him in danger and that the placement is an act of retaliation.  The first part of the complaint is a failure-to-protect claim. To assert a section 1983 failure-to-protect claim Garcia must allege facts showing that he is incarcerated under conditions posing a substantial risk of serious harm and that prison officials have been deliberately indifferent to his need for protection.  Jones, 188 F.3d at 326; Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995).  Garcia's allegations of being subjected to intimidation and extortion by other inmates, while indicative of a miserable situation, is not a dangerous condition.  Babcock v. White, 102 F.3d 267, 271-72 (7th Cir. 1996).  Because Garcia has not alleged that he suffered any physical injury or that he faces any present risk of injury, he is not entitled to any recovery on a failure-to-protect claim.  Jones, 188 F.3d at 326.

Garcia also complains about his living quarters assignment and his new job at the hog barn.  As a prisoner, Garcia has no right to a particular placement, and prison officials have the discretion to send him wherever they believe is appropriate.  Olim v. Wakinekona,

103 S.Ct. 1741, 1748 (1983). Garcia was transferred from the Trustee camp after he reported that an inmate had tried to sexually assault him. Docket Entry No. 11-2, at 25. In light of the facts alleged by Garcia, the transfer was a reasonable (and perhaps necessary) step taken to protect Garcia from a potential assailant. See Newton v. Black, 133 F.3d 301, 307 (5th Cir. 1998) (prison inmates are entitled to reasonable protection from attacks by other inmates). The fact that Garcia found that his general conditions were worse after being transferred does not support a finding of a constitutional violation. Meachum v. Fano, 96 S.Ct. 2532, 2583 (1976). Likewise, he does not have a protected right to a particular work assignment. Tighe, 100 F.3d at 42. The fact that he was given a less desirable job after filing a grievance does not give rise to an actionable claim. Morris v. Powell, 449 F.3d 682, 687 (5th Cir. 2006).

Garcia claims that the actions taken against him were made in retaliation for filing grievances. To assert a claim of retaliation Garcia must present facts showing: (1) a specific constitutional right, (2) the defendants' intent to retaliate against Garcia for exercising that right, (3) a retaliatory adverse act, and (4) causation. Morris, 449 F.3d at 684, citing McDonald v. Steward, 132 F.3d 225, 231 (5th Cir. 1998). "Causation requires a showing that 'but for the retaliatory motive the complained of incident . . . would not have occurred.'" McDonald, quoting Johnson v. Rodriquez, 110 F.3d 299, 310 (5th Cir. 1997).

-8-

In spite of the court's direct inquiries, Garcia provides no information indicating that the decision to transfer him was motivated by any purpose other than to remove him from a potentially dangerous situation that he reported. His unsupported beliefs do not present an actionable claim. Jones, 188 F.3d at 325. As discussed above, Garcia asserts that he was removed from the Trustee camp because he reported that inmate Williams had touched his legs. Docket Entry No. 11-2, at 25. Given the facts provided by Garcia, it would not be reasonable to ascribe an improper motive to the decision to remove him from the Trustee camp that would support a finding of retaliation. See McDonald, 132 F.3d at 231.

Garcia also complains that he was subjected to numerous cell searches, which he alleges were conducted in retaliation for his filing grievances. However, he fails to provide any facts to back his claim other than his assertion that his history of filing grievances was known among the officers. Given the purpose and circumstances of a prison, it is evident that its inmates do not have the same expectation of privacy as those in free society; and, consequently, the Fourth Amendment does not impose restrictions on how cell searches are conducted. Hudson v. Palmer, 104 S.Ct. 3194, 3200 (1984). This is not to say that an inmate cannot assert a claim that he has been harassed by guards who are constantly searching his cell for the soul purpose of retaliation. However, Garcia provides nothing to support such a claim other than the fact

that the searches followed his grievances.  This will not suffice. See Enlow v. Tishomingo County, Miss., 45 F.3d 885, 889 (5th Cir. 1995) (plaintiffs' claim of retaliation, which rested largely on the sequence of events showing that the plaintiffs were prosecuted only after they had filed their § 1983 suit did not amount to a reasonable inference of retaliatory intent).  Likewise, Garcia's complaint about being watched by female guards while he is showering fails to support an actionable claim because the courts have previously upheld such actions, and there are no facts to show any retaliatory animus behind the activity.  See Oliver v. Scott, 276 F.3d 736 (5th Cir. 2002) (upholding strip searches by female guards where security concerns warranted it), citing Letcher v. Turner, 968 F.2d 508, 510 (5th Cir. 1992) (upholding use of female guards viewing male prisoners taking showers).

Garcia's complaint has no legal basis and is legally frivolous.  Berry v. Brady, 192 F.3d 504, 507 (5th Cir. 1999).  He has filed this action as a pauper and is subject to the provisions of the Prison Litigation Reform Act, which authorizes the courts to dismiss frivolous prisoner complaints.  28 U.S.C. § 1915(e).  This prisoner civil rights action will be dismissed as frivolous.

### IV.  Application to Proceed In Forma Pauperis

Garcia's Application to Proceed In Forma Pauperis (Docket Entry No. 12) will be granted.  However, he is still obligated to pay the entire filing fee ($350.00) under the provisions of 28

U.S.C. § 1915(b).  The TDCJ-CID Inmate Trust Fund will be instructed to withdraw $6.00 from Garcia's account and forward the funds to the Clerk.  Thereafter, the Inmate Trust Fund shall deduct 20 percent of each deposit made to Garcia's account and forward the funds to the Clerk on a regular basis, in compliance with the provisions of 28 U.S.C. § 1915(b)(2), until the entire fee has been paid.

### V. Conclusion

The court **ORDERS** the following:

1. This Prisoner Civil Rights Complaint, filed by Ramon Garcia, TDCJ-CID No. 1200692, is **DISMISSED** because it is frivolous.  28 U.S.C. § 1915(e).

2. Garcia's Application to Proceed In Forma Pauperis (Docket Entry No. 12) is **GRANTED**.

3. The TDCJ-CID Inmate Trust Fund shall collect the filing fee and forward it to the court as provided in this Memorandum Opinion and Order.

4. The Clerk shall send a copy of this Memorandum Opinion and Order dismissing this action to the parties; the TDCJ - Office of the General Counsel, P.O. Box 13084, Austin, Texas 78711, Fax Number 512-936-2159; and the Pro Se Clerk for the United States District Court, Eastern District of Texas, Tyler Division, 211 West Ferguson, Tyler, Texas 75702.

**SIGNED** at Houston, Texas, on this 28th day of August, 2009.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE